1  **ROBERT L. AMICK, ESQ.**
   Nevada Bar No. 5204
2  **AMICK LAW OFFICE**
   6030 S. Rainbow Blvd., Ste. D-1
3  Las Vegas, Nevada 89118
   Phone:  (702) 320-1616
4  Fax:     (702) 320-3979
   *Attorney for Plaintiff*
5  *BARRY S. LANGWEILER*

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8  | BARRY S. LANGWEILER, | Case No.: 2:09-cv-01207-PMP-GF |
9  | Plaintiff, | |
10 | vs. | **OPPOSITION TO DEFENDANT'S** |
11 | WESTERN UNITED INSURANCE | **MOTION FOR SUMMARY JUDGMENT** |
   | COMPANY, d/b/a AAA NEVADA | **ON PLAINTIFF'S SECOND AND THIRD** |
12 | INSURANCE COMPANY, and DOES I | **CAUSES OF ACTION** |
13 | through X, inclusive, | |
14 | Defendant. | |

15       COMES NOW Plaintiff BARRY LANGWEILER, by and through his attorney of record,

16  Robert L. Amick, Esq. of Amick Law Office, and Opposes Defendant Western United Insurance

17  Company, d/b/a AAA Nevada Insurance Company's Motion for Summary Judgment On Plaintiff's

18  Second and Third Causes of Action.  This opposition is made and based upon the papers and

19  pleadings on file herein, the presented memorandum of points and authorities hereof, and oral

20  argument at the time of hearing, if deemed necessary.

21                                    **I.**

22            **MEMORANDUM OF POINTS AND AUTHORITIES**

23                          **Summary Of Facts**

24       Plaintiff Barry Langweiler (Plaintiff) sustained serious and permanent injuries in a motor

25  vehicle accident that occurred in Las Vegas, Nevada on September 11, 2007.  The instant matter

26  arises out of an underinsured motorist (UIM) claim made by Plaintiff to his automotive insurance

27  carrier, Defendant AAA Nevada Insurance Company (Defendant) relative to this accident.

28  /      /      /

1    Plaintiff was initially was evaluated for accident-related injuries by Richard Briggs, M.D. on
2    September 14, 2007.  His care for his spinal symptomology was transferred to spine surgeon
3    Jaswinder Grover, M.D. on October 16, 2007.  In correspondence dated September 13, 2008, Dr.
4    Grover wrote that he had recommended that Plaintiff consider Anterior Cervical Decompression
5    Reconstruction Fusion surgery at C4-5 C5-6.  The doctor stated that, within a reasonable degree of
6    medical probability, Plaintiff's then-current physical condition and need for treatment, including but
7    not limited to the aforementioned surgical recommendation, was causally related to injury sustained
8    in the September 11, 2007 accident, and estimated the cost of the recommended surgery to be
9    approximately $91,300.00.  In addition to past medical specials in the amount of approximately
10   $70,773.00, Dr. Grover's estimated surgery costs brought the total for medical damages incurred by
11   Plaintiff as a result of the underlying accident to approximately $162,073.00, well in excess of the
12   tortfeasor's policy limit of $100,000.00.

13   Defendant retained Judith Kidd, R.N., Nurse Consultant of Health Cost Management, LLC,
14   to conduct a Provider Bill Review of the medical expenses provided to her regarding Plaintiff up to
15   that time.  On December 31, 2008, the nurse recommended a reduction of Plaintiff's past accident-
16   related medical expenses by $32,394.76; from $78,936.96 to $46,542.20.  Obviously, as a Registered
17   Nurse, Ms. Kidd was unable to offer any credible opinion relative to the estimated cost of the surgery
18   and other future treatment recommended by Dr. Grover, and did not attempt to do so.

19   Defendant contacted Plaintiff's counsel on March 12, 2009, stating that they did not have
20   enough information to evaluate Plaintiff's UIM claim, requesting Plaintiff to attend an "independent
21   medical evaluation" with James Olson, M.D., a physician on Defendant's retainer.  In his report
22   regarding his April 23, 2009 evaluation, Dr. Olson opined that he could not find "objective evidence
23   that any ongoing painful conditions exist secondary to the [subject] motor vehicle accident," and that
24   "[t]here is abundant evidence indicating and suggesting that no ongoing traumatic diagnosis exists."

25   Defendant rejected Plaintiff's previously-made policy limit demand on May 7, 2009, making
26   no counteroffer whatsoever to Plaintiff's demand despite its knowledge of Plaintiff's approximately
27   $162,073.00 in substantiated past and future medical specials.  Plaintiff filed his Complaint in Clark
28   County District Court on May 20, 2009.  Defendant filed its Notice of Removal of the action to

1   United States District Court on July 2, 2009.  Defendant served Plaintiff with its Notice of Removed

2   Action on July 6, 2009.  Plaintiff served Defendant with an Offer of Judgment in the amount of the

3   limit of Plaintiff's UIM policy on July 7, 2009.  The Joint Status Report relative to the instant action

4   was filed on July 17, 2009.  Defendant answered Plaintiff's Complaint on September 9, 2009, and

5   filed its Demand for Jury Trial on September 11, 2009.  The Joint Discovery Plan and Scheduling

6   Order was filed on October 15, 2009, with the discovery order being filed on October 19, 2009.

7          No genuine issues of fact exists between the parties.  That certain treatment and medical

8   expenses have been incurred by Plaintiff as a result of the subject accident is not in dispute .

9                                          **II.**

10                                     **ARGUMENT**

11   **A.**     **Defendant's Allegation That It Conducted a "Reasonable Investigation and**
              **Evaluation of Plaintiff's Claim" Is Not Supported By the Facts Contained**
12            **Herein**

13              *i.*   *Defendant Has Been In Possession of Plaintiff's Treatment Records and*
                      *Billings, and/or Medical Authorizations Permitting Them to Obtain*
14                    *Plaintiff's Records and Billings, From January 3, 2008 Forward*

15          The defense alleges that Defendant did not engage in bad faith when it evaluated

16   Plaintiff's claim "based on the <u>available information</u>," implying that Plaintiff hindered Defendant

17   from obtaining the billing and records deemed by the defense as necessary to evaluate and handle

18   Plaintiff's claim.  In actuality, Plaintiff's counsel notified Defendant of his representation of

19   Plaintiff on October 7, 2007.[1]  upon Defendant's request, on January 3, 2008 Plaintiff provided

20   Defendant with executed Authorizations for the records of Jaswinder Grover, M.D., Plaintiff's

21   primary orthopedist relative to his spinal complaints, and Richard Briggs, M.D.[2]  On January 9,

22   2008, Plaintiff forwarded the billing of Nevada Spine Clinic to Defendant for payment,[3] and

23   reiterated this payment demand on April 10, 2008.[4]

24          On August 20, 2008, Defendant's Senior Claims Specialist Shauna Hay sent

25   correspondence to Plaintiff's counsel, in which she stated that she had been assigned to handle

26   ————————————————

27   [1]  *See* **Exhibit 1**, facsimile transmission from Plaintiff's counsel to Brian Zaidel, dated October 9, 2007
     [2]  *See* **Exhibit 2**, facsimile transmission from Plaintiff's counsel to Benjamin Boyle, dated January 3, 2008
     [3]  *See* **Exhibit 3**, facsimile transmission from Plaintiff's counsel to Benjamin Boyle, dated January 9, 2008
28   [4]  *See* **Exhibit 4**, facsimile transmission from Plaintiff's counsel to Benjamin Boyle, dated April 10, 2008

Plaintiff's claim.  Ms. Hay requested Plaintiff's execution of a Medical Authorization, stating that she had ordered Plaintiff's records from Drs. Grover and Briggs, implying that Defendant had failed to do so previously, despite the fact that Plaintiff's counsel had provided Defendant with an executed Authorization relative to these providers approximately 7½ months before.[5] Plaintiff's counsel provided Ms. Hay with an updated Authorization on August 21, 2008.[6]  Ms. Hay followed up in correspondence sent Plaintiff's counsel on four (4) separate occasions between August 22, 2990 and October 20, 2008.  In each correspondence Ms. Hay alleged that she had ordered the records of Plaintiff's medical providers, and demanded that Plaintiff provide all of his medical records for the five (5) years preceding the underlying accident.[7]

As Defendant was obviously not actively engaging in any reasonable investigation or evaluation of Plaintiff's claim, on December 2, 2008 Plaintiff's counsel sent Defendant a demand letter, accompanied by all of Plaintiff's medical records and bills through that date.  Counsel cited  Plaintiff's past medical specials in the amount of approximately $70,773.00 and Dr. Grover's estimated future surgical costs totaling approximately $91,300.00 for a total of approximately $162,073.00, noting that this amount was well in excess of the tortfeasor's policy limit of $100,000.00.  Plaintiff's counsel demanded proof and tender of Plaintiff's uninsured policy limits by December 17, 2008.[8]

It was apparently not until on or about December 31, 2008, approximately one (1) year after first obtaining the means to obtain Plaintiff's medical records, that Defendant actually engaged in any reasonable investigation or evaluation of Plaintiff's claim by providing Judith Kidd, R.N. with billing relative to Plaintiff's treatment with various health care providers,.  Further, despite the defense's allegations to the contrary, as shall be demonstrated below, it would not have mattered <u>what</u> records and billing Plaintiff produced to Defendant, its Registered Nurse Consultant medical billing reviewer, as well as its "IME" physician, would have found that

---

[5] See **Exhibit 5**, correspondence from Shauna Hay to Plaintiff's counsel, dated August 20, 2008
[6] See **Exhibit 6**, facsimile transmission from Plaintiff's counsel to Shauna Hay, dated August 21, 2008
[7] See **Exhibit 7**, correspondence from Shauna Hay to Plaintiff's counsel, dated August 22, 2008, September 19, 2008, October 7, 2008, and October 20, 2008
[8] See **Exhibit 8**, correspondence from Plaintiff's counsel to Shauna Hay, dated December 2, 2008

1  most, if not all, of Plaintiff's treatment was unrelated to the underlying accident and denied

2  Plaintiff's claim out-of-hand.

3         ii.  *The Report of James Olson, M.D.'s "Independent" Medical Evaluation of Plaintiff Clearly Demonstrates That Defendant's Investigation and*

4  *Evaluation of Plaintiff's Claim Was Not Undertaken With the Contractual Good Faith and Fair Dealings Obligations It Owed Plaintiff*

5  *In Mind*

6      At Defendant's behest, Plaintiff attended an "independent" medical evaluation with

7  James Olson, M.D., a physician on Defendant's retainer, on April 23, 2009.  Prior to this

8  evaluation, the doctor reviewed records of Plaintiff's medical treatment with various providers

9  between September 29, 2000 and July 24, 2008.  In his report, the doctor described degenerative

10  conditions in Plaintiff's spine, simply stating that the vast majority of Plaintiff's post-accident

11  treatment was unrelated to the accident, but without indicating exactly what that treatment might

12  have been related to.  Dr. Olson concluded that Plaintiff sustained "some degree of injury

13  secondary to the motor vehicle accident," that being a right knee contusion and cervical sprain

14  strain, but opined that there was "abundant evidence suggesting that no ongoing traumatic

15  diagnosis exists."  The doctor, who is located in Reno, Nevada, further set forth that it is

16  "somewhat difficult" for him to render an opinion as to whether the billing of Plaintiff's treating

17  physicians was "usual and customary," because, as Dr. Olson admitted, "I do not know the exact

18  standard and traditional fees in Las Vegas, Nevada."[9]  *Emphasis added*.  Somehow, however,

19  Defendant was of the opinion that a Registered Nurse located in Beaverton, Oregon would be

20  able to render a credible opinion relative to the amount of Plaintiff's medical billing, and that her

21  opinion appears in the defense's Motion.  When viewed in the light of Dr. Olson's admission,

22  this allegation is highly unlikely.

23      The defense's reliance on Dr. Olson's opinions to the exclusion of the opinions of

24  Plaintiff's treating physicians in denying Plaintiff's claim is tantamount to requiring Plaintiff to

25  prove a negative, that Plaintiff did not suffer from the alleged condition or from any

26  symptomology arising therefrom prior to the underlying accident.  Certainly, as a practical matter

27  _____

28  [9] *See* **Exhibit 8**, report relative to Dr. Olson's "Independent" Medical Evaluation of Plaintiff, dated April 23, 2009

1   it is never easy to prove a negative. *Elkins v. United States*, 364 U.S. 206, 218 (1960). It is also

2   a practice that is not looked upon with favor in the 9th District and in the State of Nevada. *See*

3   *Andrews v. Harley Davidson, Inc.*, 106 Nev. 533, 539-40 (1990) ("[W]e conclude that it is unfair

4   to force the plaintiff consumer to prove a negative"). See also *United States v. Charlesworth*,

5   217 F.3d 1155, 1158 (9th Cir. 2000) (holding that the government must not compel a defendant to

6   prove a negative in sentencing phase, on a preponderance of the evidence standard); *Quillen v.*

7   *State*, 112 Nev. 1369, 1378 (1997) (referring to the unenviable position of having to prove a

8   negative); *Backus v. Owe Sam Goon*, 235 F. 847 (9th Cir.1916) (noting that it was probably

9   beyond the power of an individual in an immigration case to prove a negative). Consequently,

10  the defense's primary reliance on their "independent" evaluating physician's opinion relative to

11  Plaintiff's alleged pre-existing degenerative spinal condition in denying his claim was

12  unreasonable and unfair.

13      The defense's relies on *Sculimbrene v. Paul Revere Ins. Co.*, 925 F. Supp. 505, 508 (E.D.

14  Ky. 1996) and *Seidman v. Minnesota Mut. Life Ins. Co.*, 40 F. Supp. 2d 590, 594 (E.D. Pa.1997)

15  in stating that "[i]t is not bad faith to rely upon an independent medical evaluation over the

16  opinion of treating doctor." However, once the facts of those cases are brought to the fore, these

17  holdings are utterly inapplicable to the instant matter. In *Sculimbrene*, <u>plaintiff's treating</u>

18  <u>psychiatrist</u> recommended that the plaintiff be evaluated by a particular <u>independent evaluating</u>

19  <u>psychiatrist</u>, and <u>the defendant consented to the treater's choice</u>. *Seidman* simply cites

20  *Sculimbrene* to follow the logic of that court. Accordingly, the defense's reliance upon

21  *Sculimbrene* and *Seidman* to support of its allegation is misguided.

22          iii.   <u>*The Report of Judith Kidd, R.N.'s "Usual & Customary Review" of*</u>
               <u>*Plaintiff's Medical Billing Further Demonstrates That Defendant's*</u>
23             <u>*Investigation and Evaluation of Plaintiff's Claim Was Not Undertaken*</u>
               <u>*With the Contractual Good Faith and Fair Dealings Obligations It Owed*</u>
24             <u>*Plaintiff In Mind*</u>

25      Defendant retained Judith Kidd, R.N., and provided her with billing relative to Plaintiff's

26  medical treatment with various providers between April 7, 2005 and July 24, 2008, in the total

27  amount of $78,936.96, in order to perform a "Usual & Customary Review" of Plaintiff's medical

28  billing. Ms. Kidd's review resulted in the nurse's opining that $32,394.76 of this total billing

1   was entirely inapplicable to Plaintiff's UIM claim, and recommended a reduction of Plaintiff's

2   medical bills to $46,542.20.  Ms. Kidd completely ignored the fact that Dr. Grover had

3   recommended that Plaintiff consider anterior cervical decompression reconstruction fusion

4   surgery at C4-5 and C5-6 on September 13, 2008, and had estimated the cost of the

5   recommended surgery to be approximately $91,300.00.  The nurse's Review apparently then

6   underwent a <u>rubber-stamp review</u> "by a physician consultant who concurred with her opinions."[10]

7          Defendant provides no evidence confirming that a <u>Registered Nurse Consultant located in</u>

8   <u>Beaverton, Oregon</u>, a city approximately 750 miles from Las Vegas, has any formal qualification

9   whatsoever for <u>accurately</u> determining whether the billings of orthopedic surgeons, fellowship-

10  trained and board-certified spine surgeons, anesthesiologists, internists, neurologists, and a

11  variety of health care facilities relative to certain treatments were "<u>usual and customary</u>" <u>for Las</u>

12  <u>Vegas, Nevada</u>.  The nurse's opinions become even more questionable when taken in light of the

13  statement of Dr. Olson.  As noted in *Section ii, above*, the doctor stated that he was unable to

14  comment on whether the billing of Plaintiff's health care providers was "usual and customary"

15  because, being located in Reno, Nevada, he was unaware of "the exact standard and traditional

16  fees" in Las Vegas.

17

18          iv.  *It Is Inappropriate for Defendant to Assign Zero Value To the*
                *Underinsured Motorist Claim Brought Against It by Plaintiff When*

19              *Plaintiff's Claim Has Been Substantiated over and Beyond the Limits of*
                *the Tortfeasor's Policy*

20          On May 7, 2009, Defendant sent correspondence to Plaintiff's counsel stating that, on the

21  basis of the reports of Ms. Kidd, R.N. and Dr. Olson, it had been determined that <u>medical</u>

22  <u>specials in the total amount of $10,839.37</u> would have been appropriate compensation for

23  Plaintiff in the underlying accident.  Defendant concluded that, "partially due to the inability of

24  Plaintiff to substantiate his claims regarding the extent of his alleged injuries ... and his alleged

25  need for future surgery," Plaintiff's attributable medical expenses were less than benefits already

26  _____

27          [10] *See* **Exhibit 9**, Health Cost Management LLC "Usual & Customary Review" of Plaintiff's medical
    billing from Nevada Anesthesia Consultants, Center for Spine & Special Surgery, Hans Jorg Rosler, M.D., Luis
28  Diaz, M.D., Nevada Spine Clinic, Richard R. Briggs, M.D. and Craig T. Tingey, M.D., and Internal Medicine
    Spicialists *(sic)*, dated December 31, 2008

1   paid him by the tortfeasors' insurance carrier.  This was despite the facts that the tortfeasor's
2   insurance carrier had previously paid Plaintiff compensation in the amount of $100,000 relative
3   to the underlying accident, and Plaintiff's substantiated past and future medical damages
4   exceeded what was recovered from the tortfeasor.

5          According to Defendant's logic, Plaintiff's claim should have been denied by this 3rd
6   party insurer as well.  Despite extensive evidence to the contrary, Defendant was still able to
7   rationalize that it was not necessary to pay any further compensation to Plaintiff relative to his
8   UIM claim.  Through its reliance on the reports of Ms. Kidd and Dr. Olson to effectively assign
9   zero (0) value to Plaintiff's UIM claim clearly demonstrates that Defendant attempted to utilize
10  the paid opinions of these "qualified health professionals" in an attempt to avoid  fulfilling its
11  good faith and fair dealing obligations to its insured.  However, on the basis of the foregoing in
12  *Sections A.ii* and *A.iii*, above, Defendant has failed to state any reasonable basis for their
13  statements that Plaintiff's billings simply do not relate to the loss.  Accordingly, the defense has
14  yet to prove the actual basis for their denial of Plaintiff's UIM claim.

15          **B.      Defendant's Allegation That the Instant Matter Involves a Dispute Over**
16  **As To the Value of Plaintiff's Claim Misrepresents the Actual Basis For**
    **Plaintiff's Complaint**

17          The defense has asserted that the instant matter involves a genuine dispute as to the <u>value</u>
18  <u>of Plaintiff's claim</u>.  This assertion misrepresents the basis for Plaintiff's Complaint.  Plaintiff
19  states that this action actually involves a genuine dispute over <u>whether Defendant properly and</u>
20  <u>timely evaluated and handled Plaintiff's claim</u>; <u>whether Defendant's actions were reasonable</u>
21  <u>under the circumstances</u>.  Facts on the record demonstrate that, in light of the contractual good
22  faith obligations Defendant owes to its insured, Defendant failed to fulfill its good faith and fair
23  dealing obligations to Plaintiff relative to the subject claim.

24          Through their misrepresentation to the Court that it is the <u>value</u> of Plaintiff's claim that is
25  at issue between the parties in the instant matter, as opposed to the <u>genuine</u> issue of <u>Defendant's</u>
26  <u>evaluation and handling of Plaintiff's claim</u>, their citation of *Schumacher v. State Farm Fire &*
27  *Cas. Co.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006) and *Garcia v. Dawahare*, 2008 U.S. Dist.
28  LEXIS 108448 *16-18 (D. Nev. Mar. 26, 2008) in support of their arguments is misguided.

1  Accordingly, the defense's allegation that "summary judgment is necessary and proper" is
2  unsupported by the facts herein.

3      The foregoing demonstrates that, in their attempt to avoid having Defendant raise a
4  defense against Plaintiff's substantiated allegations that it engaged in bad faith when evaluating
5  and handling Plaintiff's claim, the defense has misrepresented the basis of the dispute between
6  the parties.  Defendant cannot escape from fulfilling its good faith and fair dealing obligations to
7  its insured by simply paying a registered nurse located in Beaverton, Oregon to dispute treatment
8  charges which were supported by the treating physician.  Nor does sending a check to a doctor
9  for a defense opinion satisfy denial of a properly substantiated claim, particularly in light of the
10  fact that there is nothing "independent" about Defendant's evaluating physician, Dr. Olson.
11  Plaintiff states that Defendant's Motion for Summary Judgment must be denied in its entirety.
12  Discovery must be conducted regarding Plaintiff's Second and Third Causes of Action in order to
13  prove the veracity of the allegations  contained therein.

14  **III.**

15  **CONCLUSION**

16      Based upon the foregoing, Plaintiff respectfully requests this Honorable Court to deny
17  Defendant's Motion for Summary Judgment On Plaintiff's Second and Third Causes of Action in
18  its entirety.

19      DATED this 26th day of October, 2009.

20                          **AMICK LAW OFFICE**

22                          By: / S / Robert L. Amick
                            **ROBERT L. AMICK, ESQ.**
23                          Nevada Bar No. 5204
                            6030 S. Rainbow Blvd., Ste. D-1
24                          Las Vegas, Nevada 89118
                            *Attorney for Plaintiff*
                            *BARRY S. LANGWEILER*